UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

GINX, INC., d/b/a LOLA, GAYLE PATRICK-
ODEEN, individually, TOM ODEEN,
individually

                    Plaintiffs,

            -against-

SOHO ALLIANCE, DANIEL B. BOYLE,
individually, LAWRENCE GEDDA, individually,
NOREEN HEALEY, individually, JOHN S.
SWEENEY, individually, JOHN EVANS,
individually, and MARIE EVANS,
individually,

                   Defendants.

-------------------------------------------------------------

09-CV-6977 (CM)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

RAYMOND W. BELAIR, ESQ.
(RB9297)
ATTORNEY FOR DEFENDANTS
JOHN EVANS AND MARIE EVANS
61 BROADWAY, SUITE 1320
NEW YORK, NEW YORK  10006
(212) 344-3900

*OF COUNSEL*:

    RAYMOND W. BELAIR, ESQ.
    (RB9297)

    MARSHALL J. SHEPARDSON, ESQ.
    (MS2091)

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................... 1

ALLEGATIONS OF FACT ...................................................................... 2

ARGUMENT ................................................................................. 2

I.    The Complaint Must Be Dismissed Under
      Rule 12(b)(6) Because Plaintiffs Fail
      to State Any Cornizable Claim Under the
      U.S. Civil Rights Act. ............................................................ 2

      A.    The Three Basic Elements in a Private
            § 1981 Action ................................................................. 3

      B.    Plaintiffs Ginx, Inc., and Tom Odeen
            Cannot Assert § 1981 Claims Because
            They Are Not Members of a
            Racial Minority. .............................................................. 3

      C.    The Complaint Fails to Plead Facts Even
            Suggesting Discriminatory Intent by
            Moving Defendants. ........................................................... 4

      D.    The Complaint Does Not Implicate Any
            of the Activities Enumerated by
            § 1981 .......................................................................... 6

            1.    No § 1981 Claim Exists Because
                  There Is No Predication on Any
                  Alleged Contract. ......................................................... 7

            2.    No § 1981 Claim Exists Because
                  Defendants Never Had or Refused
                  Any Contractual Relationship
                  with Plaintiffs. ........................................................... 9

            3.    Courts Have Dismissed § 1981
                  Claims in All Analogous Cases. ...................................... 10

II.   New York Civil Rights Law Requires
      Dismissal of this Action as an
      Impermissible SLAPP. ............................................................ 12

      A.    The Alleged Conduct Is Entirely Within
            Defendants' Constitutional Rights ................................... 12

B.    The Anti-SLAPP Statute's Application
      and Purpose ........................................13

C.    Plaintiff's Claims Are Precisely
      Those Constituting a SLAPP Case,
      and Must Be Dismissed as Having
      No Basis in Law. ..................................15

III.  Defendants Are Entitled to Attorney's
      Fees for Defending against Plaintiff's
      SLAPP. ............................................18

CONCLUSION ...............................................21

## PRELIMINARY STATEMENT

In this case individual plaintiffs were owners and/or operators of a restaurant named "Lola," which applied for and was granted a liquor license by the New York State Liquor Authority ("SLA"), over opposition from various members of the SoHo community where Lola operated. Plaintiffs now assert claims under 42 U.S.C. § 1981, alleging that the opposition they faced was motivated not by concern about yet another bar opening in SoHo's already saturated community, but by racial animus against plaintiff Gayle Patrick-Odeen, a co-owner of Lola who, according to the Complaint, is of African-American descent.  The alleged injury is that Lola ultimately closed due in part to the expense of overcoming the community's opposition to the SLA application.  Notwithstanding the outright absurdity of plaintiffs' new accusation of racism against Moving Defendants, these allegations must be and are treated as true for the purposes of this motion.  Even assuming the truth of these allegations, however, the Complaint must be dismissed both because it fails to state a claim upon which relief can be granted and on First Amendment grounds.

First, plaintiff's allegations fail entirely to state a claim under § 1981.  Not only are two of the plaintiffs ineligible to bring a suit because they are not members of

a minority, but the allegations completely lack the requisite predicate of an identifiable contract or any discriminatory act to which § 1981 may apply.

Importantly, the Complaint itself plainly states that the alleged conduct of Moving Defendants took place exclusively within legitimate legal avenues, and consisted entirely of the constitutionally-protected exercise of the rights to free speech, to participate in public proceedings and to petition the Government.  The Complaint is therefore a SLAPP suit, a Strategic Lawsuit Against Public Participation.  Under New York law, it must therefore be rapidly dismissed because it has no substantial basis in law.  In addition, Moving Defendants are entitled under New York's Anti-SLAPP statues to all attorney's fees incurred in the defending against this baseless action.

## ALLEGATIONS OF FACT

The Court is respectfully referred to paragraphs 8 and 9 of the accompanying Affirmation in Support of Motion of Raymond W. Belair, Esq., dated December 4, 2009, for a statement of the relevant factual allegations.

## ARGUMENT

I.   **The Complaint Must Be Dismissed Under Rule 12(b)(6) Because Plaintiffs Fail to State Any Cognizable Claim Under the U.S. Civil Rights Act.**

### A.    The Three Basic Elements in a Private § 1981 Action

In a commercially-related case, a plaintiff must show three basic elements to make out a claim under 42 U.S.C. § 1981: 1.) Plaintiff must be a member of a racial minority; 2.) There must be intent to discriminate on the basis of race by the defendant; and 3.) There must be discrimination in one or more of the activities enumerated in the statute. Lautre v. International Business Machines Corporation, 216 F.3d 258, 261 (2d Cir. 2000); Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288–89 (5th Cir. 2004); Bellows v. Amoco Oil Company, 118 F.3d 268, 274 (5th Cir. 1997).  None of the plaintiffs in this action have pleaded --nor can they establish--such elements, even assuming arguendo that all the allegations and reasonable inferences therefrom are true.

### B.    Plaintiffs Ginx, Inc., and Tom Odeen Cannot Assert § 1981 Claims Because They Are Not Members of a Racial Minority.

The requisite showing under § 1981 is that plaintiff is a member of a racial minority.  See, e.g., Lautre, supra, 216 F.3d at 261.  According to the the Complaint, neither plaintiff Ginx, Inc., nor Tom Odeen meets this threshold standard.  Ginx, Inc., is identified by the Complaint as "a privately-owned company."  (Ex. A, para.

3

3.)  Although it may qualify as a "person" for the purpose of its capacity to sue, it simply cannot be a member of a racial minority because it is not a natural person. Therefore, all claims made by plaintiff Ginx., Inc., against Moving Defendants must be dismissed outright.

Plaintiff Tom Odeen, although a natural person, is likewise ineligible to maintain a § 1981 claim.  The Complaint clearly states: "He [Tom Odeen] is White."  (Ex. A, para. 4.)  Therefore, he is not a member of a racial minority and all claims made on his behalf against Moving Defendants must be dismissed.  Therefore, only plaintiff Gayle Patrick-Odeen overcomes even this preliminary pleading hurdle.

### C.   The Complaint Fails to Plead Facts Even Suggesting Discriminatory Intent by Moving Defendants.

The only conduct of Moving Defendants actually alleged in the Complaint, again, is passing out flyers.  Plaintiffs do not allege that said flyers contained overtly racist statements that might directly evince discriminatory intent.  Rather, they suggest that the flyer contained "thinly veiled and well-understood code words used to suggest that Lola would be a black establishment catering to a largely black clientele."  However, nowhere in the Complaint is any fact alleged suggesting that Moving

4

Defendants were motivated to distribute such flyers because plaintiff Gayle Patrick-Odeen is African-American. Instead, the alleged content of the flyer applies to the likely customers of the business, not to the plaintiff herself.  Therefore, even if these allegations are true, they in no way insinuate any discriminatory intent directed against plaintiff herself.

"It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." Martin v. New York State Dept. of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978). See also Lanaux v. Central New York Psychiatric Center, 152 F.3d 919 (2d Cir. 1998)(plaintiff's claim dismissed because she "failed to provide concrete facts to support her claim of sex discrimination.").

Here, the closest thing in the Complaint to makes alleging discriminatory intent is the conclusory allegation that Moving Defendants opposed the liquor license "because of the African-American race of one of Lola's owners and because of the presumed African-American races [sic] of the majority of Lola's assumed patrons...." (Ex. A, para. 20.) Since no "assumed patrons" are plaintiffs here, and none of

5

the plaintiffs has standing to sue on the behalf of such
persons, the only relevant language amounts to the mere
conclusory assertion that Moving Defendants' public
participation was "because of" the racial identity of one
plaintiff.  This is insufficient to overcome § 1981'a
second element.

    In reality, the content of the flyers clearly
concerned noise and congestion that might negatively impact
the community if another bar opened.  However, even if we
credit the absurd insinuation that whoever passed them out
had a discriminatory motive (which is not supported by any
of the facts alleged even under a generous assumption of
their truth), there could never have been any
"discrimination" under § 1981 because passing out the
flyers ultimately had no effect, as plaintiffs themselves
allege, considering that the SLA subsequently granted the
liquor license, and the Appellate Division ultimately
upheld it.  (Ex. A, para. 9., sub-paras. p.–v.)

    **D.   The Complaint Does Not Implicate Any of the
         Activities Enumerated by § 1981.**

    The third element of making out a § 1981 claim is
"discrimination in one or more of the activities enumerated
in the statute."   Lautre, supra, 216 F.3d at 261.  Courts
have identified four enumerated activities:

> By its language, Section 1981 establishes four
> protected interests: (1) the right to make and enforce
> contacts; (2) the right to sue, be parties, and give
> evidence; (3) the right to the full and equal benefit
> of the laws; and (4) the right to be subjected to like
> pains and punishments.

Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th

Cir 1989).  Here, the only right which may even

hypothetically be advanced by plaintiffs is the making or

enforcement of contracts, since it concerns their

commercial venture.  However, such a claim is incoherent,

legally unsustainable and without precedent.  It lacks the

proper predicate of any alleged actual contract, and in any

event Moving Defendants were never in any position to

actually discriminate against any plaintiff.

> 1.    No § 1981 Claim Exists Because There Is No
>       Predication on Any Alleged Contract.

A clearly worded decision of the District Court of the

Southern District of New York has established that

"according to the plain language of Section 1981,

plaintiff's claim would have to be based on a contractual

relationship" and that the claim is invalid where "there is

no allegation of such a relationship."  Moscowitz v. Brown,

850 F.Supp. 1185, 1192 (S.D.N.Y. 1994), abrogated on other

grounds by Lautre, supra, 216 F.3d 258.  See also Rowe

Entertainment, Inc. v. The William Morris Agency, Inc.,

1999 WL 335139 (S.D.N.Y. 1999), an unreported decision

dismissing a claim under § 1981 because "plaintiff's failure to allege the deprivation of even one specific contractual relationship negates any claim under § 1981." (citing <u>Moscowitz</u>, <u>supra</u>., 850 F.Supp. 1185).

The Tenth Circuit interpreted the law in the same way in <u>Phelps v. Wichita Eagle-Beacon</u>, <u>supra</u>, 886 F.2d 1262. There, the court pointed out that plaintiff relied on past cases "involv[ing] interference with the first enumerated interest--the right to make and enforce contracts." <u>Id</u>. at 1267. However, the Court observed:

> Those cases are distinguishable from this case because they all involve *actual* loss of employment or other contract interests. By contrast, plaintiff here merely alleges *possible* loss of *future* opportunities. Plaintiff has alleged that defendants' actions have interfered with his 'prospective business opportunities....'

<u>Id</u>. (citations omitted). Therefore, the court held that "plaintiff's Section 1981 claim was properly dismissed because...plaintiff has not alleged that he was deprived of an interest protected by Section 1981." <u>Id</u>.

<u>Phelps</u> is analogous because plaintiffs appear to base their claims on some possible and speculative contract relationships, regarding the Lola restaurant they were

setting up.[1]  However, such a theory fails for the reasons
stated by the Fifth Circuit:

> ...but we find [plaintiff's] vague and conclusory
> allegation insufficient to state a deprivation of the
> right to make and enforce contracts that is protected
> by Section 1981. Plaintiff has the same right as
> others to enter into contracts with those who wish to
> contract with him. Even if the state has defamed him
> and thus arguably made him less attractive to some who
> otherwise might want to contract with him, the
> defamation does not deny him the basic right to
> contract.

Id. Here, like there, even if plaintiffs had asserted a
vague or speculative future contract right with which
Moving Defendants interfered, they would still fail to
state a § 1981 claim.

> 2.  No § 1981 Claim Exists Because Defendants
>     Never Had or Refused Any Contractual
>     Relationship With Plaintiffs.

The Fifth Circuit has addressed an analogous claim in
a decision here applicable.  In Green v. State Bar of
Texas, the plaintiff-appellant had contracted with a class
of insurance claimants to negotiate their claims on their
behalf with defendant-respondent State Farm Insurance
Company; he argued that State Farm discriminated against
him when it refused to engage in negotiations with him as
contemplated with his agreement with his clients.  27 F.3d
1083 (5th Cir. 1994).  However, the Fifth Circuit

---

[1] This characterization is founded only on a liberal and favorable
reading of the Complaint, since the pleadings fail even to allege that
such an ephemeral contract right existed.

disallowed the claim irrespective of any discrimination, explaining:

> Appellant has not complained that State Farm refused to contract with him or that State Farm somehow impeded his right to enforce a contract in either the courts or nonjudicial avenues. All he alleges is that State Farm refused to honor a third-party contract he had with his clients. Thus, Appellant has failed to allege how State Farm could have discriminated against Appellant in the formation or enforcement of any contract. Accordingly, Appellant has presented no viable claim upon which relief can be granted under § 1981.

Id. at 1086-87.

Thus, the court there held that a contract must have existed or have been refused between the plaintiff and the defendant, rather than between the plaintiff and some third party, for a claim to exist. In other words, an outside party's alleged interference with a plaintiff's contract with another person cannot serve as a basis for a § 1981 action. Therefore, even entertaining the idea that plaintiffs had some theoretical or expected prospective contractual relationship with the SLA, or some clientele, Moving Defendants cannot be held liable for interfering with it. Id.

       3.   Courts Have Dismissed § 1981 Claims in All
           Analogous Cases.

Plaintiff's § 1981 claims are so inappropriate in the context here asserted that few courts have had the

opportunity to address even remotely similar claims.  Those
claims that have been examined which have even attenuated
connection have been soundly rejected.  The most nearly
analogous case is Shaikh v. City of Chicago, 341 F.3d 627
(7th Cir. 2003).  In that case, the plaintiff (of East-
Asian descent) was a prospective buyer of property in
Chicago from the U.S. Department of Housing and Urban
Development ("HUD"), but was informed by the municipal
government that it intended to condemn the property to
expand a college campus.  This dissuaded the plaintiff from
purchasing, but the City ultimately did not condemn the
property.  Mr. Shaikh then brought a § 1981 suit, claiming
that the City's threats were borne of discriminatory
motives against him.

The Seventh Circuit upheld the District Court's
summary judgment against Mr. Shaikh, stating:

> [W]ithout regard to preferences of race, nationality,
> citizenship, or personality, Shaikh's §§ 1981 and 1982
> claims fail for a more fundamental reason: Because the
> City had no power directly to affect HUD's proposed
> sale of the property to Shaikh, it did not unlawfully
> or unconstitutionally impede upon Shaikh's ability to
> purchase the building.  More fundamentally still, the
> possibility that the City would seek...eminent domain
> is a risk every private property owner bears, but it
> is a risk balanced by constitutional requirements....

Id. at 629.  In the instant matter, Moving Defendants' role
parallels that of the City in Shaikh.  It had no power

11

directly to affect any commercial relationship between plaintiffs and the SLA or a clientele.  Moreover, the risk that community members will oppose the issuance of a liquor license is one that every restaurateur bears, and it is one that is balanced by the procedural protections of the very channels in which plaintiffs were ultimately vindicated when their license was granted and upheld.

In Shaikh, the Circuit Court emphasized that is not a violation to "state [one's] intention" to pursue legal recourse where such legal challenge "would have to be carried out within constitutionally and statutorily mandated limits."  Id. at 632.  Likewise, here, it was no violation of the Civil Rights Act for Moving Defendants to express or exercise their rights to petition the government within legitimate channels.  This, of course, implicates the very concerns which impelled the New York legislature to enact laws against strategic lawsuits against public participation ("SLAPPs"): to prevent plaintiffs from bringing punitive or retaliatory lawsuits involving a defendant's First Amendment activity.  To prevent such abuses, the Anti-SLAPP laws require this case to be speedily dismissed, and entitle Moving Defendants to attorney's fees.

12

## II. New York Civil Rights Law Requires Dismissal of this Action as an Impermissible SLAPP

### A. The Alleged Conduct is Entirely Within Defendants' Constitutional Rights.

It is central to the constitutional principles of the United States that the Government must always protect and may never abridge the "freedom of speech...and to petition the Government for a redress of grievances." U.S. Const. Amend. I. Similarly, the New York Constitution guarantees the right "freely [to] speak, write and publish [one's] sentiments on all subjects," and the "rights of the people peaceably to assemble and to petition the government, or any department thereof...." Const., Art. I, §§ 8 and 9. The sole conduct alleged, passing out flyers and petitioning a governmental body in regard to contemplated official action (here, the grant of a license to sell liquor), falls squarely within the ambit of these constitutionally guaranteed freedoms.

### B. The Anti-SLAPP Statute's Application and Purpose

In 1993, New York enacted a statutory framework designed "to protect a citizen who is subjected to a SLAPP ("Strategic Lawsuits Against Public Participation") suit arising from the exercise of a right of public petition and/or participation." Allan and Allan Arts Ltd. v. Rosenblum, 201 A.D.2d 136, 143-44, 615 N.Y.S.2d 410, 415

13

(2d Dept. 1994). New York Civil Rights Law § 76-a(1)(a) defines a SLAPP as a legal action brought by "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body," against a defendant who has exercised the right to "report on, comment on, rule on, challenge or oppose such application or permission."[2]

---

[2] The complete text of N.Y. Civil Rights Law § 76-a reads:

1. For purposes of this section:

(a) An "action involving public petition and participation" is an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission.

(b) "Public applicant or permittee" shall mean any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission.

(c) "Communication" shall mean any statement, claim, allegation in a proceeding, decision, protest, writing, argument, contention or other expression.

(d) "Government body" shall mean any municipality, the state, any other political subdivision or agency of such, the federal government, any public benefit corporation, or any public authority, board, or commission.

2. In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

Quoting the legislative findings and purpose, the
<u>Allan</u> court explained that it is "the policy of the state
that the rights of citizens to participate freely in the
public process must be safeguarded with great diligence.
The laws of the state must provide the utmost protection
for the free exercise of speech, petition and association
rights, particularly where such rights are exercised in a
public forum with respect to issues of public concern."
<u>Id.</u>, 201 A.D.2d at 143-44, 615 N.Y.S.2d at 415.

> **C.   Plaintiff's Claims are Precisely Those
> Constituting a SLAPP Case, and Must Be Dismissed
> as Having No Basis in Law.**

Here, the Complaint reads as if drafted specifically
to trigger New York's Anti-SLAPP provisions.  Plaintiffs'
narrative establishes each of the plaintiffs as a "person
who has applied for or obtained a...license...for use or
permission to act from any government body," having both
applied for and obtained a license to sell liquor from the
governmental body which issues such licenses, the New York
State Liquor Authority ("SLA").

The alleged conduct of Moving Defendants of which
plaintiffs complain can be seen to comport perfectly with
"efforts of the defendant to report on, comment on, rule

---

3. Nothing in this section shall be construed to limit any
constitutional, statutory or common law protections of defendants
to actions involving public petition and participation.

on, challenge or oppose such application or permission."
The very wording of the claims stated by the Complaint
against Moving Defendants concedes that the alleged conduct
took place within "regularly-issued legal process"!  (Ex.
A, para. 20.)  Because Moving Defendants are not even
alleged to have done anything except to have spoken out
against the issuance of a liquor license and to "challenge
or oppose" it, the instant suit is a classic "action
involving public petition and participation" under Civil
Rights Law § 76-a(1)(a).

New York law definitively provides for the dismissal
of an action fitting the definition of a SLAPP codified in
Civil Rights Law § 76-a:

> A motion to dismiss...in which the moving party has
> demonstrated that the action...is an action involving
> public participation as defined in paragraph (a) of
> subdivision one of section seventy-six-a of the civil
> rights law, shall be granted unless the party
> responding to the motion demonstrates that the cause
> of action has a substantial basis in law or is
> supported by a substantial argument for an extension,
> modification or reversal of existing law.

CPLR 3211(g).  See Street Beat Sportwear, Inc. v. National
Mobilization Against Sweatships, 182 Misc.2d 447, 454, 698
N.Y.S.2d 820, 826 (Sup.Ct. N.Y. County 1999), dismissing a
case for failure to state a cause of action because the
defendant demonstrated the complaint was a SLAPP.  Here,
the instant motion ought clearly to be granted because the

16

Complaint has no basis in law, and because there is no legally cognizable basis to permit an action to continue where, as here, the basis for alleged liability is premised on the exercise of freedoms to speak and petition.

Even were it to be assumed, <u>arguendo</u>, as alleged by plaintiffs, that defendants were motivated by some racial bias, there would still exist no legal basis for the lawsuit.  The Supreme Court of the United States has noted that "it is obviously peculiar in a democracy, and perhaps in derogation of the constitutional right 'to petition the Government for a redress of grievances,' U.S. Const., Amdt. 1, to establish a category of lawful state action that citizens are not permitted to urge."  <u>City of Columbia v. Omni Outdoor Advertising, Inc.</u>, 499 U.S. 365, 379, 111 S.Ct. 1344, 1353 (1991).  Holding in the context of anti-trust litigation initiated by private actors, the Court explained, "That a private party's political motives are selfish is irrelevant."  <u>Id</u>., 499 U.S. at 380, 111 S.Ct. at 1354.  Therefore, the Court noted that the government shall protect "a concerted effort to influence public officials regardless of intent or purpose."  <u>Id</u>.  (citing <u>Mine Workers v. Pennington</u>, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593 (1965)).

17

Likewise, it would be both improper and impractical to scrutinize the motives of citizens for participating in public proceedings, when they do so both legally and through legitimate channels.  The procedural safeguards within those channels, such as plaintiffs' hearing before the SLA and Administrative Judge Rodriquez, or the dispassionate adjudication of the New York State Supreme Court, ensure that any allegedly odious motive, such as racism, is not, and cannot be, a factor; but rather that each case is evaluated on its merits.

The lack of merit in the instant suit becomes even more clear when an attempt is made to analyze the claims against the proffered legal basis: 42 U.S.C. § 1981.  (Ex. A, para. 20.)  As detailed in Section I. *supra*, none of the rights protected by § 1981 are implicated in any way. Therefore, not only do plaintiffs lack a substantial legal basis for overcoming the Anti-SLAPP law, but the Complaint fails utterly to state a claim upon which relief may be granted.  In order to prevent the institution of cases as lacking in merit as this one, the Anti-SLAPP laws further provide for attorney's fees.

**III. <u>Defendants Are Entitled to Attorney's Fees For Defending Against Plaintiff's SLAPP</u>.**

Federal Rule of Civil Procedure 54 provides for
attorney's fees where authorized by statute.  PGC Property,
LLC v. Wainscott/Sagaponack Property Owners, Inc., 250
F.Supp.2d 136, 144 (E.D.N.Y. 2003); see also Hoitt v.
Vitek, 495 F.2d 219, 220-21 (1st Cir. 1974)("Appropriate
bases for fee awards include statutory authority for such
grants."); Jordon v. Gilligan, 500 F.2d 701, 705 (6th Cir.
1974)("A court may tax attorney fees in the appropriate
circumstances in cases involving private parties or where
sanctioned by statutory law."), certiorari denied 421 U.S.
991, 95 S.Ct. 1996; Smoot v. Fox, 353 F.2d 830, 832 (6th
Cir. 1965)("Attorney's fees are also allowable where they
are specifically authorized by statute or provided for by
agreement between the parties."), certiorari denied 384
U.S. 909, 86 S.Ct. 1342, rehearing denied 384 U.S. 958, 86
S.Ct. 1568.

New York's SLAPP laws expressly provide for and
encourage the award of attorney's fees against a plaintiff
bringing a suit involving public participation.  Section
70-a of the New York Civil Rights Law is a companion to §
76-a's prohibition of SLAPPs, which provides that the
defendant in such a suit is entitled to costs, including
attorney's fees, from the party who instated the SLAPP

suit.[3]  It has furthermore been specifically recognized by
U.S. District Courts in New York that the State's Anti-
SLAPP statute authorizes federal courts to tax attorney's
fees incurred in defending against a SLAPP suit.  <u>PGC
Property</u>, <u>supra</u>, 250 F.Supp.2d at 144 ("[T]he SLAPP permits
costs and attorney's fees in defending the action.")(citing
N.Y. Civil Rights Law § 70-a(1)(a)).

---

[3] The complete text of N.Y. Civil Rights Law § 70-a reads:

> 1. A defendant in an action involving public petition and
> participation, as defined in paragraph (a) of subdivision one of
> section seventy-six-a of this article, may maintain an action,
> claim, cross claim or counterclaim to recover damages, including
> costs and attorney's fees, from any person who commenced or
> continued such action; provided that:
>
> (a) costs and attorney's fees may be recovered upon a
> demonstration that the action involving public petition and
> participation was commenced or continued without a substantial
> basis in fact and law and could not be supported by a substantial
> argument for the extension, modification or reversal of existing
> law;
>
> (b) other compensatory damages may only be recovered upon an
> additional demonstration that the action involving public
> petition and participation was commenced or continued for the
> purpose of harassing, intimidating, punishing or otherwise
> maliciously inhibiting the free exercise of speech, petition or
> association rights; and
>
> (c) punitive damages may only be recovered upon an additional
> demonstration that the action involving public petition and
> participation was commenced or continued for the sole purpose of
> harassing, intimidating, punishing or otherwise maliciously
> inhibiting the free exercise of speech, petition or association
> rights.
>
> 2. The right to bring an action under this section can be waived
> only if it is waived specifically.
>
> 3. Nothing in this section shall affect or preclude the right of
> any party to any recovery otherwise authorized by common law, or
> by statute, law or rule.

It has further been specified that "when 'there is a dismissal of an action...the defendant is the prevailing party,'" and can therefore tax attorney's fees as provided by statute or agreement. VP Gables, LLC v. The Cobalt Group, Inc., 597 F.Supp.2d 1326, 1330 (S.D.Fla. 2009)(quoting First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1015 (7th Cir. 1985)).

Section 70-a of the N.Y. Civil Rights Law provides for the taxing of attorney's fees attorney's fees to fulfill the legislature's intent to "provide the utmost protection for the free exercise of speech, petition and association rights, particularly...with respect to issues of public concern." Allan, supra, 201 A.D.2d at 143-44, 615 N.Y.S.2d 319, quoted in Street Beat, supra, 182 Misc.2d at 451, 698 N.Y.S.2d at 823. Otherwise, any public applicant or permittee can harass his or her opponents through SLAPPs without recourse, imposing litigation costs on them for the lawful exercise of rights.

Therefore, this Court should tax attorney's fees in favor of Moving Defendants under Fed. Rule Civ. P. 54 and N.Y. Civil Law § 70-a to make them whole, as well as to provide a disincentive to prevent plaintiffs from attempting to prolong or revive this suit at any time in the future.

21

## **CONCLUSION**

Because the instant action fails to state a claim upon which relief may be granted and is an impermissible Strategic Lawsuit Against Public Participation, the Amended Complaint should be dismissed as against defendants JOHN EVANS and MARIE EVANS, and attorney's fees should be awarded in favor of defendants JOHN EVANS and MARIE EVANS in the (estimated) amount of $76,000.00.

Dated:    New York, NY
          December 4, 2009          /s/_____
                                    RAYMOND W. BELAIR, ESQ.
                                    (RB9297)